IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OLEWASAMI BROWN,

                              Plaintiff,

v.

CITY OF OAKLAND, et al.

                              Defendants.

NO. C03-1141 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

This matter came before the Court on June 12, 2006 on Defendants' Motion For Summary Judgment.  This case  arises out of the stop and arrest of Plaintiff Olewasami Brown ("Brown").  Brown alleges that he was unlawfully stopped by California Highway Patrol and Oakland Police Department officers on the basis of a falsified warrant, and then was the victim of excessive force by Oakland Police Department officers.   The four defendants remaining in the case, John Gutierrez, Randall Wingate, T.F. Aberouette, and Eric Richolt contend they are entitled to summary judgment because: 1) they are entitled to qualified immunity on Plaintiff's claim that the warrant was procured with false statements, and, even assuming the search warrant was invalid, the stop and arrest were valid on alternate grounds; and 2) that they are entitled to summary judgment on Plaintiff's excessive force claims, either because his injuries were *de minimis*, he has not raised a triable issue of fact, or the officers are entitled to qualified immunity.   For the reasons set out below, the motion is GRANTED as to Brown's claims relating to the validity of the warrant, the stop, and the arrest; GRANTED as to Brown's claim of excessive force relating to Defendant Gutierrez's hold on Brown's jaw; GRANTED as to any claim against Defendant Aberouette relating to

United States District Court

For the Northern District of California

the claim of excessive force in the Oakland Federal Building; and DENIED as to that claim of excessive force as to Defendants Gutierrez, Wingate, and Richolt.

**BACKGROUND**

This case stems from the stop and arrest of Olewasami Brown on March 16, 2001.   In February, 2001, Oakland police officer and Defendant John Gutierrez received a tip from a confidential informant that Brown was dealing narcotics.  The Oakland Police Department ("OPD") began an investigation of Brown.

Brown admits he was on probation at the time of the investigation.  He was subject to a search clause as a condition of his probation which required him to submit to search, with or without a warrant, by any law enforcement officer, of his person, vehicle, residence, or other property under his control.[1]   Nonetheless, on March 6, 2001, Gutierrez applied for a search warrant.  In his supporting affidavit, Gutierrez said his investigation showed Brown was dealing narcotics from three locations in Oakland and Vallejo.  Gutierrez obtained search warrants that allowed officers to search Brown, his vehicles, and two of the properties for cocaine and related items. Gutierrez and OPD Sergeant Brock decided to serve the warrants by having the California Highway Patrol ("CHP") stop Brown's vehicle pursuant to the warrants and search the residences while he was being detained.

On March 16, 2001, CHP officers (along with a convoy of OPD officers) followed Brown on Highway 80 in order to conduct the stop.    Officers testified that they observed Brown speeding and making frequent unsafe lane changes, possibly in order to evade them. *See, e.g.*, Deposition of Frank Romano, May 18, 2005, at 16:16-17:20.  They pulled Brown over, and the OPD officers arrived on the scene.

---

[1]  The Defendants' unopposed request for judicial notice pursuant to Fed. R. Evid. 201 of two documents from the Alameda Superior Court Criminal Division File No. 132250A, *People of the State of California v. Olewasami Brown*, "Minute Order re: Probation," dated March 25, 1998, and the Reporter's Transcript of Proceedings dated March 25, 1998, is hereby GRANTED.

United States District Court
For the Northern District of California

1    CHP officer Frank Romano testified that he approached the driver's side and observed

2    Brown reaching into the middle console of the Tahoe SUV.   Romano removed Brown from

3    the vehicle.

4    Another CHP officer searched the Tahoe and found a .45 caliber pistol in the center

5    console.  Defendant Gutierrez arrested Brown for violations of Cal. Penal Code §§ 12021(a)

6    (ex-felon in possession), 12025(a) (concealed firearm), 12031(a) (carrying a loaded firearm

7    in public), and 1203.2 (revocation of probation on arrest).  .

8    Sgt. Brock attempted to take a photograph of Brown.  Gutierrez told Brown several

9    times to stay still, and Brown refused.  Brown testified, "he try to tell me lift my head up.  I

10   didn't want to lift my head up, so he grabbed my neck and pulled it up himself."  Deposition

11   of Olewasami Brown, February 27, 2006 ("Brown Depo."), at 165:22-23.  Brown says he

12   was "choking," *id.* 166:12-13, and that he could "breathe a little bit."  *Id.* at 167:12-20.

13   Gutierrez admits he held "under [Brown's] chin and the back of his shirt."  Deposition of

14   John Gutierrez, June 2, 2005 ("Gutierrez Depo.") at 177:22-23.  Brock took the photo.

15   Brown and Tucker were taken to the Oakland Federal Building.  In the meantime,

16   officers searched the three properties they suspected Brown of frequenting, pursuant to both

17   the warrants and the probation search authority, and found firearms, ammunition, cocaine

18   base, and other incriminating items.   Brown was charged with multiple counts of possession

19   of controlled substances, weapons violations, and a probation violation.

20   In the early evening, Gutierrez and other officers returned to the Federal Building.

21   What happened next was disputed.  Brown claims that "Defendants Gutierrez, Wingate, and

22   Richolt used excessive force against Brown when Gutierrez held Plaintiff down while

23   Wingate and Richolt struck Brown."  Opp. at 2:19-20.   At his deposition, Brown said that "a

24   bunch" of officers rushed into the holding tank, Gutierrez held him down, and one officer hit

25   him with his right fist on the left cheek.  Brown Depo. at 219-222.   He claims he suffered

26   chipped teeth and one of his teeth cracked and later fell out, although he never sought dental

27   treatment. *Id.* at 230-31.

28

3

United States District Court
For the Northern District of California

1    Defendants deny that anyone struck Brown.  Defendant and OPD Officer Wingate

2    testified that at one point, he escorted Brown to a holding cell.  When he removed Brown's

3    handcuffs, Brown – who had been yelling obscenities -- turned and took an "aggressive

4    stance."  Declaration of Randall Wingate In Support of Defendants' Motion for Summary

5    Judgment, ¶ 3.  Wingate pushed him in the chest using his right hand and told him to "sit

6    down."  *Id.*  Brown sat down but continued to yell.  Gutierrez and officer Rodriguez came to

7    see what the noise was but just saw Brown sitting on a bench, yelling loudly.  In his

8    deposition, Gutierrez said he believed that Officer Richolt "had to pull… Brown off of

9    Officer Wingate."  Gutierrez Depo. at 177:1-2, but Richolt denies he had any interaction with

10   Brown that evening.  Declaration of Eric Richolt In Support of Defendants' Motion for

11   Summary Judgment, ¶ 3.  Defendant Aberouette was not at the scene.

12   Brown was held at Santa Rita from March 20, 2001 to March 15, 2002, when the

13   criminal case against him was dismissed "in the interests of justice" and he was released.

14

15   **LEGAL STANDARD**

16   Summary judgment is appropriate when there is no genuine dispute as to material

17   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

18   Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby,*

19   *Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

20   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The

21   court may not weigh the evidence and must view the evidence in the light most favorable to

22   the nonmoving party.  *Id.* at 255.

23   A party seeking summary judgment bears the initial burden of informing the court of

24   the basis for its motion, and of identifying those portions of the pleadings and discovery

25   responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

26   *Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at

27   trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than

28   for the moving party.  *Id.* at 322-23.  However, on an issue for which its opponent will have

4

1   the burden of proof at trial, the moving party can prevail merely by "pointing out to the

2   District Court . . . that there is an absence of evidence to support the nonmoving party's

3   case." *Id.* at 325.  If the moving party meets its initial burden, the opposing party must then

4   "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion.

5   Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.

6

7   **DISCUSSION**

8   **I.      Constitutional Challenge to the Search Warrant**

9           Brown claims his Fourth Amendment rights were violated because Gutierrez procured

10  the search warrants by making false and misleading statements in his affidavit.  Brown

11  charges that numerous statements in the warrant are false:  for example, that he never resided

12  at one of the houses involved, that he never had a key to that house, that "[m]any events

13  described in the warrants by Gutierrez never took place with Brown or may have taken place

14  but involved one of Brown's close relatives," Plaintiff's Points and Authorities in Opposition

15  to Motion for Summary Judgment ("Opposition") at 4:3-4, and that he never sold or gave

16  cocaine base to anyone.  Brown asserts that the real reason he was stopped was that he was a

17  murder suspect, and that OPD Officer and Defendant Felix Aberouette had a grudge against

18  him and was harassing him.  Without the warrant, he argues, the stop and arrest were

19  unlawful.

20          Defendants contend they are entitled to qualified immunity for this § 1983 claim.

21  Under the doctrine of qualified immunity, even if a constitutional violation occurred,

22  government officials are immune from liability if their conduct "does not violate clearly

23  established statutory or constitutional rights of which a reasonable person would have

24  known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

25          In *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995), the Ninth Circuit set out the showing

26  plaintiff  must make to survive a motion for summary judgment in cases where, as here, the

27  plaintiff claims his Fourth Amendment rights were violated by use of a falsely procured

28  warrant and the defense claims qualified immunity.   First, the plaintiff must make a

**United States District Court**
For the Northern District of California

"substantial showing" that the officer "submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth," *Hervey*, 65 F.3d at 788, *quoting Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991). Second, the plaintiff must show that "without the dishonestly included or omitted information, the magistrate would not have issued the warrant" – that is, that "the remaining information in the affidavit is insufficient to establish probable cause." *Id.* at 789. This is the same showing a plaintiff would be required to make to be entitled to an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). *Id.*

The plaintiff's allegations of falsity "cannot be merely conclusory and must be accompanied by a detailed offer of proof." *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982), *citing Franks*, 438 U.S. at 171. At least one court has found, in the *Franks* context, that a defendant's own declaration that the statements in the affidavit are false is insufficient to make such a showing: in *United States v. Valencia*, 24 F.3d 1106, 1109 (9th Cir. 1994), the Ninth Circuit simply stated that defendant's declaration denying the officer's version of events in the affidavit (asserting, for example, that he had never driven by a certain address, although the officer stated he saw the defendant driving there) "is not a substantial showing of intentionally or recklessly made false statements."

Plaintiff has made neither the substantial showing of knowing falsity or recklessness nor the showing of materiality required to survive summary judgment on any of the challenged statements in the affidavit.

Some of the allegedly false statements simply are not actually contained in the affidavit. Gutierrez did not state that Brown lived at 1620 Chestnut, or owned more than one car; he simply reported what the confidential informant had said. See Declaration of Gregory Fox in Support of Defendants' Motion for Summary Judgment ("Fox Declaration"), Exh. B, Affidavit for Search Warrant at 3-6.

As to the other statements, Brown has not made the "substantial showing" required. To support his argument that Gutierrez falsely or recklessly claimed he was dealing cocaine, Brown cites to the police report of the searches and arrests – which shows Brown had little

United States District Court

For the Northern District of California

1   cash when he was arrested (approximately $400) and that no drugs were found in the Vallejo

2   search cite.    He also relies on his own interrogatory response stating that he never gave or

3   sold anyone cocaine, and the fact that no one took pictures of the "controlled buy."  Brown's

4   own self-serving statement, the fact that he had cash, and the fact that he had guns rather than

5   drugs in his home do not prove Gutierrez's statements were false.

6          Brown also seems to allege that Gutierrez falsely or recklessly claimed he was

7   observing Brown, when he was in fact observing his relative who resembles him, Jabrail

8   Armstrong.  But Brown offers no evidence apart from his own interrogatory response to

9   support the claim of resemblance (such as photos).  Even if Armstrong's fingerprints were

10  found on items recovered during the search, that evidence would be insufficient to show the

11  officers were observing Armstrong rather than Brown on the numerous occasions set out in

12  the affidavit.

13         Brown contends Gutierrez falsely stated he saw Brown open the front door to 1620

14  Chestnut with a key.  But he has offered no evidence, other than his own denial, to show this

15  statement is false.  Similarly, Brown alleges that Gutierrez's claims that he made surveillance

16  conscious driving movements or sold drugs to a confidential informant in a controlled buy

17  were false, but offers no evidence other than his own flat denials to show falsity.

18         Brown appears to claim that Gutierrez omitted from the affidavit any mention that

19  Brown was a suspect in a murder investigation.  Opposition at 4:19-22.  Even assuming for

20  the sake of argument that Brown was a murder suspect, and that Gutierrez omitted that fact,

21  Brown makes no argument or showing that the omission was "material" – that had the

22  information been included, the warrant would not have issued.  *See Liston*, 120 F.3d at 973-

23  74.

24         In sum, plaintiff's self-serving denials of wrongdoing and unsupported statements do

25  not constitute the substantial showing of falsehood or reckless disregard for the truth required

26  to survive summary judgment.  *Hervey,* 65 F.3d at 788.  Defendants are entitled to qualified

27  immunity.

28         Moreover, even if the warrant had been falsely procured, there were at least two other

7

United States District Court

For the Northern District of California

1  lawful reasons for stopping Brown.  First, Brown's speeding and unsafe lane changes

2  justified the stop.  A police officer's observation of erratic driving and speeding creates

3  probable cause to believe a defendant is violating a traffic safety regulation. *United States v.*

4  *Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985), *citing Delaware v. Prouse*, 440 U.S. 648, 661

5  (1979).  Two officers observed Brown speeding and making unsafe lane changes.  Gutierrez

6  Depo. at 112-113, Romano Depo. at 15-17.  Second, the stop was valid because of the search

7  clause that was a condition of Brown's probation.  The search clause allowed for warrantless

8  search of Brown's person, vehicle, and other property under his control.  The Supreme Court

9  has held that a warrantless search of a probationer, supported by reasonable suspicion and

10 authorized by a condition of his probation, is reasonable within the meaning of the Fourth

11 Amendment.  *United States v. Knights*, 534 U.S. 112, 121-22 (2001).   The "actual

12 motivations" of individual officers are irrelevant; the search is valid, whether for probation or

13 investigation purposes, if it is objectively reasonable under the totality of the circumstances.

14 *Id.*   There was "reasonable suspicion" to believe Brown was engaged in criminal activity, so

15 the search was valid.

16      Finally, the arrest was unquestionably valid.  Brown admits he was an ex-felon, and

17 that he placed a .45 caliber pistol in the center console of his Tahoe.  Brown Depo. at 132-

18 136.  Although the parties dispute whether the gun was loaded, it was unlawful for Brown to

19 possess a firearm or carry a concealed firearm loaded or unloaded.  *See* Cal. Penal Code §§

20 12021(a) (ex-felon in possession); 12025(a) (concealed firearm);  *People v. Harrison,* 1

21 Cal.App.3d 115, 122 (1969)(§ 12021 makes it unlawful for an ex-felon to carry a concealable

22 firearm, loaded or unloaded).

23      Defendants' motion is therefore GRANTED as to Brown's claims relating to the

24 validity of the warrant, the stop, and the arrest.

25

26 **II.    Plaintiff's Excessive Force Claims**

27      Plaintiff makes two excessive force claims:  first, that Defendant Gutierrez used

28 excessive force in holding his head up for a photograph and thereby choking him at the time

of his arrest;  and second, that he was held down by Gutierrez and punched in the face by another officer(s) while he was in the holding area at the Oakland Federal Building later the same day.

Brown claims that Defendants' use of force violated both his right to be free from unreasonable seizure and his due process right to be free from pretrial punishment.  First Amended Complaint, ¶ 6(c), (d).   The Fourth Amendment "sets the applicable constitutional limitations" for each type of claim.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002).  Courts use a standard of objective reasonableness to determine whether use of force violates the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 397 (1994).  The "force which is applied must be balanced against the need for that force."  *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001), *cert. denied*, 536 U.S. 958, *quoting Liston v. County of Riverside*, 120 F.3d 965, 976 (1997).  The court assesses the quantum of force used by considering the nature and quality of the intrusion on the individual's interests, whether the suspect poses a threat to the safety of officers or is resisting, and the type and amount of force inflicted.   *Gibson*, 290 F.3d at 1197;  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).

To determine whether officers are entitled to qualified immunity for excessive force claims, the court must consider, first, whether the facts -- resolving all disputes of credibility and inferences in favor of the plaintiff -- demonstrate that plaintiff's constitutional rights were violated, and second, if plaintiff's constitutional rights were violated, whether a reasonable officer would recognize that his or her conduct violates those rights under the circumstances and in light of the law that existed at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

### A.   De Minimis Injury

In their motion, Defendants argued that, credibility issues aside, the Court should find there was no Fourth Amendment violation as a matter of law because Brown's injuries were *de minimis.*  In support of this proposition, they cite cases from other circuits which hold that, for example, "a minimal amount of *force and injury* … will not defeat an officer's qualified

9

immunity in an excessive force case." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)(emphasis added).  But the test for excessive force is one of objective reasonableness – the "force which is applied must be balanced against the need for that force."  *Deorle*, 272 F.3d at 1279.  The severity of the plaintiff's injury does not factor in to that equation.  It can, however, be *evidence* of minimal use of force.  *See, e.g.,  Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 918 (9th Cir. 2001)(use of force justified where the amount of force was not sufficient to create evidence of injury).  At oral argument, Defendants suggested that *de minimis* injury was, in fact, simply evidence that the force used was slight.  Accordingly, the Court will consider  *de minimis* injury to determine whether the use of force was reasonable *only insofar* as it is indicative of the amount of force that was applied.

**B.     Choke/Jaw Hold**

Defendants argue that they are entitled to summary judgment on plaintiff's claim that Officer Gutierrez used excessive force against him when he held his jaw to photograph him. They argue Brown's statements about the "choke" hold have been so erratic and unbelievable that he cannot raise a genuine issue of material fact for the jury.  They also argue that Gutierrez is entitled to qualified immunity on this claim.

Plaintiff's sole argument in opposition to summary judgment on the choke hold is to refer, without analysis, to the internal investigations documents reviewed *in camera* and released in redacted form to the plaintiff by Order dated March 14, 2006 (Docket No. 76). Defendants correctly argue that the court should not consider evidence of these "remedial" measures under Fed. R. Evid. § 407.  *See Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986)(city's disciplinary proceeding on use of choke hold inadmissible as a remedial measure in excessive force case).   Moreover, the internal investigation is irrelevant: whether Gutierrez's acts did or did not violate OPD standards does not prove or disprove a constitutional violation.

Given the facts of this case, the Court finds that even if there were triable issues of fact as to whether Brown was subjected to excessive force while he was photographed, Defendant Gutierrez is entitled to qualified immunity.   It is undisputed that Gutierrez held

1    Brown's jaw with one hand.  Brown Depo. at 165:24-25 ("grabbed my neck and pulled it up

2    himself"), 166:14-17.  Brown was swearing and resisting.  He was held by the neck for 15-20

3    seconds.  *Id.* at 168:10-12.  He was able to breathe.  *Id.* at 167:15.  He did not complain

4    about the incident until a picture of it was disclosed in discovery.[2]  The absence of evidence

5    of injury shows that the force used was minimal.

6          As Defendants point out, arresting officers are entitled to use "some degree of

7    physical coercion."  *Graham*, 490 U.S. at 396.  "Not  every  push or  shove, even if it may

8    later seem unnecessary in the peace of a judge's chambers, violates the Fourth  Amendment."

9    *Graham v. Connor*, 490 U.S. at 396.   Here, Gutierrez held Brown's chin without choking

10   him, and Brown did not complain of pain during the event.  At oral argument, plaintiff

11   admitted he had no authority to show that at the time of the incident, a reasonable officer

12   would be on notice that such conduct would be unlawful.

13         Under the circumstances of this case, Gutierrez is entitled to qualified immunity.

14   Accordingly, defendants' motion is GRANTED as to Brown's claim that the hold constituted

15   excessive use of force.

16   **C.      The Punch In The Federal Building**

17         Plaintiff also claims that once he was in a holding cell at the Oakland Federal

18   Building, one or two officers punched him as Gutierrez held him down, causing him to lose a

19   tooth.  The officers claim that no one punched Brown, and that Officer Wingate merely

20   pushed him onto a bench.   Defendants make no claim of qualified immunity as to this

21   incident.

22   _____

23         [2]  Brown admits that after his arrest, he made no complaint about the choking injury
either at the Oakland Jail or at Santa Rita County jail, and never sought medical treatment
relating to the incident.  Brown Depo. at 308, 313.  In his first responses to interrogatories,
Brown did not mention the choking incident when asked to state all facts supporting his
excessive force claims and his interactions with Gutierrez on the day of his arrest.  Plaintiff's
Supplemental Responses to City of Oakland's First Set of Interrogatories Nos. 9, 11, dated
October 25, 2004.   After the Defendants provided Brown with the photograph of Gutierrez
holding his neck in discovery, Fox Decl. Exh. G, however, Brown changed his claims.  In
response to Gutierrez's interrogatories, he said Gutierrez "grabbed Plaintiff by the face and
chin, twisting Plaintiff's neck and face, *while Plaintiff sat in the back of a law enforcement
vehicle*," (emphasis added), that his jaw and neck hurt, and that he felt humiliated, violated,
and embarrassed by the incident.  Fox Decl. Exh. J, Plaintiff's Amended Responses to John
Gutierrez's Interrogatories, dated February 6, 2006, at: 4:15-17 and 5:3-4.

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Brown's complaints were, as Defendants argue, inconsistent.  Santa Rita medical

2    records indicate Brown complained about being hit on the left side of his head with a baton,

3    but didn't mention his teeth.  Defendants observe that the booking photo taken approximately

4    9 hours after the alleged attack does not show any swelling on the left side of Brown's face.

5    Nonetheless, this presents a classic triable issue of fact.  Brown says the punch

6    happened; the officers say it didn't. It is for the trier of fact to weigh the evidence and make

7    credibility determinations.

8    Defendants cite one Second Circuit case to argue that the court can grant summary

9    judgment where the plaintiff relies only on his own declaration.  But in *Jeffreys v. New York*,

10    426 F.3d 549, 554 (2nd Cir. 2005), the plaintiff's story was spectacularly outlandish. After

11    plaintiff was caught robbing a school, an officer saw him jump from a third-story window to

12    escape arrest.  Plaintiff told medical personnel, a police interviewer, and a corrections officer

13    he had jumped from the window.  Nine months after the fact, he complained for the first time

14    that officers had beaten him unconscious and thrown him from the window.   The Court of

15    Appeal found that it was one of the rare cases where "no reasonable person" could believe

16    the Plaintiff's testimony.   Here, in contrast, the Defendants admit that there was some

17    physical interaction between Brown and at least one officer.

18    Moreover, losing a tooth is not *de minimis* injury.  Although Brown did not offer

19    evidence of his injury other than his own testimony and some evidence that he complained of

20    pain, it is for the trier of fact to weigh the evidence and determine whether Brown's own

21    description of his injury suffices.

22    Accordingly, summary judgment is not appropriate on this claim as to Defendants

23    Gutierrez, Wingate, and Richolt.  Brown has alleged no facts, much less triable issues of fact,

24    on this claim as to Defendant Aberouette.   Defendants' motion is GRANTED as to

25    Defendant Aberouette and DENIED as to Defendants Gutierrez, Wingate, and Richolt.

26    //

27    //

28

**United States District Court**
For the Northern District of California

1  **CONCLUSION**

2      For the reasons discussed above, IT IS HEREBY ORDERED that:

3      Defendants' motion for summary judgment is GRANTED as to 1) Brown's claims

4  relating to the validity of the warrant, the stop, and the arrest; 2) Brown's claim that

5  Defendant Gutierrez's hold on his jaw constituted excessive force; and 3) Brown's claim of

6  excessive force against Defendant Aberoutte.   The motion is DENIED as to Brown's

7  excessive force claim against Defendants Gutierrez, Wingate, and Richolt.

8      The parties are HEREBY ordered to file a joint status conference statement on or

9  before July 10, 2006, and are HEREBY ordered to appear at a status conference at 1:30 p.m.

10 on July 17, 2006, for the purpose of setting trial dates.

11

12 **IT IS SO ORDERED.**

13

14 Dated: June 27, 2006                    _____

15                                          THELTON E. HENDERSON, JUDGE
                                           UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

27

28